I'm Catherine Burghardt Kramer on behalf of Appellants and I'd like to reserve two minutes for rebuttal. The core issue in this appeal is statutory interpretation of 28 U.S.C. 1782 and in particular whether section 1782 authorizes discovery for use in a private arbitration proceeding. This issue is a matter of first impression to this court and there is a circuit split on this issue. Counsel, I'm sorry but before you get further into the merits could I ask you given that the the arbitration for which at least some of this evidence you know was to have been obtained has now concluded, could you explain why there's a live controversy for us to address? Absolutely your honor and that's where I was heading right after this. So the court has certainly requested an update regarding the underlying factual circumstances. First, the discovery that was ordered by the lower court has not actually been completed. The key parts that are remaining are the depositions of Yihan Hu and the three Wuhan entities. This is as a result of the COVID-19 travel restrictions. Yihan Hu has remained in mainland China and based on her immigration status she has not been permitted to return to the U.S. and therefore her deposition hasn't occurred either individually or as a corporate representative of the entities. As appellants we contend that all written discovery has been completed. It's possible that appellees might have a different position on this. So there may be a question about whether those depositions should still happen. Perhaps that issue is moot but what about the written discovery issue? Doesn't the sanction for the written discovery, does that make it not moot because we have to resolve, at least the circuit split question, do we need to resolve that in order to figure out whether the sanctions that were imposed were proper? We believe that it's necessary to have a ruling from this court on the statutory interpretation issue. Even though the two foreign proceedings are done but there is a very newly filed additional CTAC arbitration that was instituted just last week against Tsiming Hospital involving the same general set of circumstances. So the problem that we have here is now there's a new action that's come up. We're in this weird limbo where there's an order from the court that requires us to produce additional discovery, appear for depositions, but the lower courts made no findings about additional proceedings. The lower court's order here was limited exclusively to the two foreign proceedings that were initiated previously. Even though appellees had certainly mentioned in their briefs the possibility of future proceedings, the lower court's order was not based on those. As the record stands, those two proceedings are done. CTAC issued its award, the award has been satisfied completely by Tsiming, very promptly, fully satisfied, and the Hainan court proceeding has been terminated. But now there's a new proceeding. Judge Friedland mentioned the sanctions order for your non-compliance with the earlier discovery order. If we were to agree with you on the merits and reverse the order that's under review, you didn't appeal the sanctions order. So what do you That's correct, Your Honor. We did not appeal that decision from the lower courts. We only appealed the February 25th order. Based on my understanding of the standard of review for a sanctions order, that part is not on appeal. So if we were to hold that you're correct and discovery never should have been ordered because an arbitration doesn't count as the right kind proceeding, you would still pay the sanctions? We've already paid the sanctions. And you wouldn't try to get them back? Even if it turns out you never were supposed to have to do the discovery at all? Certainly, if that's the direction this court wants to go in, I would have no intention of stopping the courts from doing so. I think that sanctions were not properly granted here for a variety of reasons. However, discovery was not stayed. There was a discovery order from the lower courts. It wasn't stayed except temporarily by the Ninth Circuit after we filed our appeal. So wait, so maybe your answer is you wouldn't try to get them? So you must have paid money to the other side because of the sanctions? Is that correct? That's correct. And you're saying that if you win this and it turns out you never should have had to do the discovery or pay the sanctions because the sanctions are based on the discovery that should never have been ordered if you win, you're just going to leave things as is? You won't try to seek anything back? It depends on the order from this court. Well, so say the order from this court is that we agree with the Second Circuit. Then what will you do? Well, procedurally, I'm not sure that we are able to go back to the and ask for reconsideration would be time barred. But certainly, if there was an instruction from this court that there should not have been sanctions ordered, that sanctions were inappropriate in this case, considering the appeal, the significant legal issues that were raised in the appeal, and the fact that we had indeed produced discovery, all of that would be a firm basis for us to not have to pay the sanctions. I'm just very confused by this because the district judge could have properly thought that sanctions were appropriate given the legal interpretation the district court had. But if we said that legal interpretation was wrong, wouldn't that mean the sanctions were wrong too? I would think so. The basis for the sanctions was the failure to produce the discovery by the deadline. And since there was no stay order in place, the court's conclusion was if there's no stay in place, you have to produce the discovery. So it was a slightly different basis for the sanctions. It was more of a timing issue. And what about clawing back any discovery? So if we ruled for you, would you try to claw back anything that you produced? We would ask that all documents would be destroyed. And at this point, we would ask for an immediate stay from this court of the remaining discovery because of the fact that the depositions have not yet occurred. And the lower court only ordered depositions for use in the two foreign proceedings, which have now terminated. There were no findings by the lower courts about using discovery for other contemplated proceedings. So we're in this position now where we can't make our witness available for a deposition because she's overseas. But she's still under a court order for a deposition. If global circumstances change, she's able to come back to the US. She's still under a court order for a deposition. So in Krapunov, I don't know how to say that case, but in that case, our court in a similar circumstance just remanded to the district court to consider further whether the changed circumstances had changed, whether the discovery was appropriate. Is it your position that that's what we should do? The difference between our case and the Krapunov case is that in our case, we have been ordered to produce discovery. In the Krapunov case, the request for discovery had been denied. So the status quo was that there was no discovery. But here we're still under an incompleted obligation to make our witness available for a deposition, but without a basis to do so. So we're in a little bit of a limbo status here, which is why I would ask for an immediate ruling, staying and all remaining discovery in this case, and then subsequently ruling on the merits, addressing the statutory interpretation issue, and as well the abuse of discretion issue, even though that's certainly secondary to the core issue here, which is statutory interpretation of section 1782, an issue of first impression to this court. And then if it's necessary, the matter could be remanded. It may be that appellees are under an obligation to institute a new action if they're seeking discovery for the newly filed CTAC arbitration. But if we don't get a ruling on the merits, I suspect it will be back here with the same issue unresolved. And therefore, since the issue has been teed up for this court, there's still a lot of controversy between the parties. We do ask for a substantive ruling on the merits of this appeal in light of all of these circumstances. Okay. Why don't you switch now to the merits, and don't worry if you go over. We obviously have some questions for you of a preliminary nature, and I'll make sure you have some time for that. Certainly. Thank you. Statutory interpretation begins, of course, with the statute's plain language. And here, the key phrase is foreign or international tribunal. And we argue that this phrase is ambiguous in the context of section 1782. So this is the threshold question. And the key statutory term, to say it again, is the phrase foreign or international tribunal within the statute. The appellees largely mischaracterize the issue of ambiguity. And it's not a question of whether the word tribunal can sometimes mean an arbitration proceeding, either colloquially or as used by the courts or the litigants or lawyers. Rather, the ambiguity here results from the use of the phrase within the statute. And certainly, we've agreed since the beginning that the phrase foreign or international tribunal could conceivably include arbitration, but it also might not include private arbitration, and this is the source of the ambiguity. Of course, if tribunal couldn't possibly mean private arbitration, there would be no ambiguity. And so you're arguing that the ambiguity allows us to look at the legislative history. Do you think there's anything affirmative in the legislative history that answers this question, or do we need to just look at the silence in the legislative history to answer this question? I think you're exactly right, Your Honor, that this is the threshold question. And if you find ambiguity, as we urge, then it opens the doors to look next to the legislative history, from there to relevant precedent from the Supreme Court and policy considerations. There isn't anything that is affirmatively on this point in the legislative history. Instead, it's an inference from silence, which is certainly less strong than if the legislative history said, we don't mean private arbitration, we only mean governmental. However, even though the silence doesn't say, there isn't anything affirmative saying private arbitration, it's also very significant that there is this silence. If Congress had intended for the revision of 1782 to substantially expand the scope of the statute, it stands to reason there would have been some mention. There would have been a word in there in the legislative history that discussed private arbitration, commercial arbitration, anything about private commercial arbitration using any of those words. And if we look at the... Maybe Congress just didn't have any occasion to think about whether the statute should extend to private arbitration. Maybe you could address why you think that would be a bad idea and why if Congress had its attention focused on this question, it would have affirmatively said, no, we don't want private arbitration panels to be counted as tribunals. Well, I think when Congress was given the mandate to put together a revision, the mandate told them to look at courts and quasi-judicial agencies. The framing of the context of something that was governmental. But I hear your invitation to go to the policy points. It's not policy. We're tasked with trying to figure out what Congress meant when it revised the statute in 1964. I take your point that it's ambiguous. It could be read either way. I'm just trying to figure out what's the most sensible way to read it in light of the larger purposes Congress is trying to achieve with the enactment of 1782. So help me understand why you think, again, had Congress's attention been focused specifically on this point, it would have had sound reasons to say, no, absolutely, we do not want private arbitration panels to be counted. Sure. I think the congressional revision that was enacted in 1964 should be seen as a step-by-step expansion. It doesn't make sense that Congress would have radically changed the scope of the statute. Before the revision, the statute was limited to judicial proceedings. And then it was expanded to proceedings in a foreign or international other governmental proceedings make sense as a revision. That's logical. That fits with the legislative history. But if you're going to all of a sudden bring in this other realm of private disputes and private proceedings where you don't have that governmental involvement, it's different. If you're in arbitration, you have a privately constituted body that sort of animal from a governmental agency or something that's quasi-judicial. Why wouldn't we view, just as in our country, why wouldn't we view arbitration panels as just kind of adjuncts of the country's established court system? Yes, it's not directly under the auspices of some government agency, perhaps, but it's basically, you know, doing an auxiliary, it's serving an auxiliary role. And I assume, but maybe I'm wrong, but I assume in China as here, that once the CTAC panel issues an award, there are various mechanisms that a winning party would invoke the court system to have that award enforced. So why don't we just see the arbitration panels as kind of part and parcel of the foreign country's judicial system? And respectfully, I would disagree with the characterization of arbitration as being part and parcel with the judiciary. It's intentionally different. It's framed in a lot of case law as being an alternative to litigation. It's a creature of contract that parties come together and affirmatively agree, find themselves to a different system. There is only limited review by the courts of decisions from arbitration. It's very well established that if you choose arbitration and you get a lousy decision on the merits, there's nothing you can do to get help for that in the court system. It's part of what you've bound yourself to by choosing arbitration. But it's a way to peacefully resolve disputes, just like courts are. And so why wouldn't Congress have thought, well, we think it's good to further the effort of peacefully resolving disputes in ways other than violence. And so arbitration is one, and courts are one, and foreign tribunals are one. I think that if Congress had intended for the statute to include private arbitration, there would have been discussion of that in the legislative history. It would have been addressed. There would have been some consideration on the merits of whether this was a policy decision that Congress intended to make. Certainly, at the time, private commercial arbitration was a relatively new field. It wasn't as common as it is today. But I think looking at the legislative history, we don't get a very clear answer one way or the other. When I look at the congressional intent to include private arbitration, I do think we need to look at other points to get a full sense of how the statute should be interpreted by this court, given the fact that there's no decision yet from the Ninth Circuit on how to interpret Section 1782. Counsel, can I ask you to go back to the text for a minute? Because I mean, I take your point that there's ambiguity in that when we look at dictionaries and judicial decisions and treatises from the 1964 era, tribunal has a broad meaning that would mean any entity that resolves disputes, and that would include arbitration. And it had a narrower meaning in some contexts that meant just courts. But we know from the history of the amendments to the statute that Congress clearly had in mind something more than just courts, because they wanted to include administrative agencies and investigating magistrates and continental systems. And so my question is, once we move, once we reject the narrow only court definition, what evidence is there that the phrase in 1964, that one possible meaning of that phrase was governmental entities that resolve disputes, whether or not they are courts, but not private arbitration? I haven't seen evidence that that was a permissible meaning of the phrase in the 60s, and I wonder if you can point me to anything that would support that. I think there are some court decisions that suggest that there are essentially two definitions of tribunal. There's either narrow, meaning courts, or broad, meaning anything. But that's not quite right, because there's a broad range of potential definitions. It's not simply one or the other. And if you don't choose the meaning that's courts, therefore it's everything. But if everything doesn't make sense, then therefore it's courts. There is a range in the middle. I think it's helpful here to look at section 1781 of the statute. Section 1781 also uses the same phrase. They also refer to foreign or international tribunals. And if we look at that statute, it's used in a context where private proceedings wouldn't make sense. It's in the context of discussing a tribunal issuing letters rogatory, and the use of these diplomatic channels wouldn't make sense for a private proceeding such as arbitration. If you look at that statute, the implication is clearly that there's some sort of governmental involvement. And as well, as I mentioned, the mandate that was given to the revision committee was to recommend procedures for rendering resistance to, quote, foreign courts and quasi-judicial agencies. And this information is contained in the Intel decision, that this was the mandate, this was the framework that was given to Congress when they were revising section 1782. They couldn't use the word court, because as you point out, the intention was to expand beyond the word court instead. Tribunal then steps into the space there, provides a word that can be used, but it wasn't intended to open up to any possible tribunal in any informal sense of the word. There's still an intended meaning for it to be governmental. Matt, can I ask a question about 1781? You're certainly right that it uses the same phrase as our statute here. Do you know, were the two statutes amended at the same time in 1964 to insert that identical phrase, or did 1781 already have that phrase in there? Did it come later? Do you know anything about the timing? That's an excellent question, and unfortunately, I don't. Okay, that's fine. Do either of my colleagues have further questions? I actually do. If I could just try to clarify, because I'm not sure I understood your position on this issue, so I just would like to try to clarify. So as to the discovery that has already happened, is it your position that there's no reason to resolve at this point whether that was appropriate or not? Yes, we're primarily focused on what happens next. Tellingly, even though we've produced 2,600 pages or more of written discovery, my understanding is that none of that material actually made its way to either of the foreign proceedings. Which is what we had said from the beginning. We said from the beginning that there wasn't anything interesting to find here, that this was being used for tactical advantage, and I think that is a risk of 1782, especially in the arbitration context. If you open it up, you allow another affront. But to get back to the mootness question, as long as those materials are destroyed and not retained, any remaining discovery is then stayed and terminated, so we get out from under the current court order obliging us to appear for a deposition, then the main concern is what happens next. Would you be able to ask for destruction of the documents whether or not we agree with your statutory interpretation? I believe so, because the two underlying proceedings have concluded there's no more use for that material. The court's order was to use those materials. Those materials were provided based on an order that they would be used for the foreign proceedings. Those proceedings are now done. And was there a protective order or something that said once those proceedings are done, the documents need to be destroyed? There is a protective order, Your Honor. And does it say that? I believe so. At the end of the day, the materials were intrusive, and nobody wants their financial records shared unnecessarily. I wouldn't say that they were that particularly meaningful. But we certainly don't want them to be held by appellees or used for any other purpose. Thank you. All right. Thank you, counsel. We'll give you two minutes for rebuttal. Let's hear from counsel for the appellee. Thank you, Your Honor. There are some things we agree on, so I'll start with those. The threshold issues, mootness, we agree it's not moot. A new arbitration has been filed with CTAC last week. It raises issues that are related but distinct from outside the scope of res judicata in China, which is rather narrow. And in fact, the same materials are relevant for that. And in addition to the arbitration, a request for provisional relief similar to last time to freeze assets and to preserve evidence have been made to the Hainan court. So the issues are actually exactly the same. Now, as Judge Friedman suggested, there is the Krapanov case. And this is definitely different. In that case, first of all, it was undisputed. The case was over, and there was nothing new. Nevertheless, it was remanded for further fact-finding. Here, it's undisputed. Well, the first case is over, but there's a new one. We do think a remand that issues as to mootness could be looked on remand. But we agree with appellants that the court should decide the core issue of whether 1782 applies to so-called private arbitration, such as the CTAC case here. Otherwise, we'd go back, and then we have to come back for yet another decision. And that would cause a judicial deficiency. The issues here, it's been fully briefed. And we'd like a decision now. Sorry, we may be getting some feedback. If the only thing preventing the issue that is the statutory interpretation of the issue that's subject to the circuit split currently, if that issue is only not moot here because of this arbitration that was filed last week that's outside our record, I don't know that we can use that as a reason to decide this case now, rather than requiring you to litigate the new arbitration issue again. How would we be able to use that new fact that we don't have in our record? Yes, Your Honor, I think it's a good question. The issue of future arbitration proceedings are in the record. We briefed to the district court. We said, look, this is relevant to the pending arbitration. The other side, the appellants were arguing, look, the arbitration is almost over. So, you shouldn't brief it. It's no need. So, we argued vigorously, look, there's some issues that will not be resolved by the pending arbitration. So, those records are before you. And it is exactly, not exactly, but it's very close to the arbitration that we talked about. For example, there are issues of ongoing infringement and misappropriation of the valuable IP of our clients. Our clients are U.S. fertility doctors who are at the cutting edge of this technology, invested in China to set up a cutting edge clinic in China. They were kicked out. All their IP was been seized. They got some compensation through the existing arbitration. But the problem is, they still have our stuff. They still have our IP. We're concerned they're continuing to use it. We need discovery to find out what's going on. I agree that the details, the details of that certainly would have to be limited, looked at the district court. But I think in terms of judicial efficiency, this is actually one of those kind of issues that's also capable of repetition and evading review. Because what typically happens, you don't see a lot of appellate decisions because the issue does become moot. But there are some that are in trouble with that argument, given that we have a second circuit opinion and sixth circuit opinion. It doesn't seem like it's that capable of evading review. You're right, Your Honor. That was perhaps an overstatement, but it's hard to get to this phase because what typically happens is the proceeding is either finished or the discovery is completed. The only reason our discovery is not completed is because of the COVID-19 issues. And we do have, unfortunately, we would have loved for the first arbitration to resolve everything. It did not resolve everything. What's your position on the sanctions order? If we were to agree with your opponents in the second circuit on the merits and reverse the order that's appealed, would you have to pay back the sanctions? No, Your Honor. And the reason why is, first of all, they've waived it by not appealing it. Second, as actually Ms. basically conceded, the basis of the sanctions order was that they willfully violated a court order. There was a court order to produce the documents within 10 days. On the ninth day, the night of the ninth day, they moved for a stay. And then they argued that, oh, well, that automatically stated, even though it wasn't granted. The district court judge found that was a violation of his order, that if they wanted to move for a stay, they should have done it a lot earlier. So, it was really just a violation of the court order. It was a timing issue. And even if the court order was wrong, the court order was binding until and unless it stayed. And you can't willfully ignore a court order like that. There was a court order in place. Rule 60b-5 allows for the district court to grant relief from a judgment or order if it was based on an earlier judgment or order that's been reversed or vacated. So, do you think, I take your point that the district court might say, well, you willfully violated an order that was in effect. And I'm sticking with the sanctions. But do you think the district court would have discretion under 60b-5 to grant some relief? I really can't speak to that. I mean, I think that you're right that that's a fairly broad thing. I don't think it would be appropriate. I can't say absolutely that there wouldn't be discretion. I also note, though, that there was an emergency appeal. The stay order was denied by this court. And the sanctions order, I think, came out. The violation occurred before that, but the sanctions order came out after that, too. But am I right that they were arguing the whole time that the statutory interpretation of 1782 means that they should not have to produce any discovery? Yes, Your Honor. Of course, they were arguing that. But the issue presented by the sanctions motion was they were arguing that even though no stay had been granted, they had a right to ignore the court order. And they just found, no, you don't. Until and unless it's, especially when you had ample time. The first time we had, there was actually a prior order, which was stayed, and then there was a remand. That time they moved for a stay within a day or two. This time they waited in the last minute, and they actually admitted they just waited. They could have filed it earlier. There was no excuse. So it was just kind of a violation of the court order. So I just find this so bizarre because I would have thought that if there were sanctions for violating a court order, the validity of the sanctions would, to some extent, depend on the appropriate, regardless of how 1782 is interpreted. Yes, because until an order is reversed or stayed, it's binding, and a court can't disrespect it. Right, but isn't this appeal about that? So I just don't understand. I just am really having trouble understanding why you both are agreeing that the sanctions are appropriate regardless, because it seems like the appeal is about the question of the discovery, whether the discovery that the sanctions were about should ever have been ordered. I'm afraid I'm just repeating myself. I think the issue is it actually wasn't. The issue was, do you have an obligation to apply with a court order that's been issued that has not been stayed and has not been reversed? It may be reversed later. That doesn't undo the obligation to comply at that moment. You have to remember there was a timing issue. The CTAC arbitration was about to end. It was urgent, and so forth. They were delaying on purpose. That was the reason they violated the order. They wanted to frustrate the whole purpose. There was a motion for stay, which was fully briefed, and it was denied. However, I agree with Judge Miller. Rule 60 is broad. I don't think it would be appropriate for the district court to set it aside, but if the court thought this was a real issue, that would still be an opportunity. Of course, we don't think the order should be reversed. Can I move to that issue now? I think on that issue, I'd like to get to the question Judge Wadsworth asked about what should have Congress done given that context? I was barely born at the time, but 1964 and actually 1958, I was born then, but barely born. This statute is actually a watershed moment in U.S. history, from what I understand, in the sense that U.S. was just entering the global stage. If you look at the Senate report for 1964, they say this legislation was part of an initiative started in 1958. Congress decided in 1958, look, U.S. is expanding overseas. Our businesses are way more international business activities. We have to modernize our legal system to cope with this expansion in international business activities, and we want to encourage cooperation in resolving in peaceful resolution of international commercial disputes. I think both Judge Freeland and Judge Wadsworth may have referred to that exact phrase, which appears in the legislative history. There's a 1964 report, a 1958 report. That's what they talk about. This is the purpose. It's not focused on courts or even governments. It's first focused on business activities, private activities of U.S. citizens doing business abroad. They want to improve judicial support for resolving those disputes peacefully. Absolutely, international arbitration is part of that. In fact, it is a major thing that has actually fueled the development of international business, including in China. In China, people would not be investing in China unless they had a well-established arbitration system. CTEC is quite well-regarded. People have confidence in investing in China because they have this system. If you look at the underlying big picture purpose, I would say absolutely. If Congress had thought about this, it would be completely consistent with that. Then I'd like to add to the next question. Do we just have silence here? Certainly, if you look at the legislative history, it's true that international arbitration is not expressly excluded or included, international commercial arbitration. This is somewhat ironic. One of the parts of the legislative history that the Second Circuit relies on most heavily, and most other courts have relied on, is actually highly in favor of our client. This is 22 U.S.C. 272. We put it in our brief. Stepping back a second, this is a different title, 22. 22 is about U.S. foreign relations of the government, diplomatic relations, consular services, and so forth. Inherently, it's a governmental statute. In 1930, there was a special statute adopted that said, when you have an international tribunal that is established pursuant to an agreement between the powers that relate to that, for example, the tribunal can issue subpoenas, and there's some kind of discovery processes. That was adopted. The critical thing about that, now what the Second Circuit has said, and a lot of other courts have said, hey, international tribunal in that context was limited to tribunals established pursuant to an intergovernmental agreement. True. Why? Because that's what the statute said. It said international tribunal or commission established pursuant to a government, this kind of agreement. What happened when 1782 was adopted? Of course, 1782 also existed before, but they kind of combined the two. Professor Smith in 1962 wrote an article saying, look, this old statute in this 22 U.S.C. 272 has some problems with it. We shouldn't limit the U.S. government. We shouldn't limit cases where the U.S. is a party. It could be just private litigants. We need to add assistance. So yeah, he wanted to get rid of that, and that shows up in, he suggested it, and it shows up in legislative history. But the critical point is they could have said international or foreign tribunal established pursuant to an agreement between governments. They had an exemplar right there in front of them, the old statute. They dropped those words. I think that's the most compelling piece of legislative history I know about. I mean, think about it. If this had just been 28 U.S.C. 1782, and it had said foreign or international tribunal established pursuant to government agreements, and then pursuant to government agreements was dropped, it would be absolutely clear that it's no longer limited. We're one step away from that, but that's what happened. Yeah. Can you address your opponent's argument concerning 1781? Yes. My concern is that if we interpret the phrase that's common to the two statutes in the way you want us to, it's going to cause problems on the letter's regulatory side. Yes, absolutely, your honor. I mean, first of all, of course, that is a new argument in their reply, which is improper. But I understand, of course, the court will want to consider it. I am going to make my argument. If you think supplemental briefing is appropriate, I'm happy to provide it because we've actually had no chance to address it. But I'm prepared to address it. They've said it would cause problems, but they actually haven't cited any case law. We don't actually know right now, and I did quick research, but I wouldn't have been able to find it. How have courts construed that? But I recognize it might be logical to construe it because of the letter's regulatory, meaning this is governmental. And that is a little unusual, but our opponents themselves have cited a Supreme Court case called Robinson, which in the context of Title VII said employee can have two different meanings in different statutes. In some statutes, it includes former employees. For example, if you're being retaliated against after you were fired. In other statutes, it means current employees. So it's unusual, but it's possible because of the context. And I don't think it would be impossible to come to that conclusion because you have the word letter's regulatory in 1781. By the way, your answer to your question, I don't know the detailed history, but I believe these two statutes were adopted together initially in 1948. They were both amended together in 1964. I don't know, though, what the language was in 1948. I believe it probably was the same and not amended, but I just don't know. So again, if you want further briefing, we'd be happy to provide it. But my basic point is I recognize the issue, but I think there is a way around it. And I don't think you need to actually decide the 1781 issue. And let me mention also, there's also this issue. I'm not sure you have to decide the international tribunal issue because you also have foreign tribunal. I do think international tribunal would win on it. There is an issue about international tribunal, whether it would include international arbitration in the U.S. That issue certainly do not need to decide because this arbitration, of course, was in China. It's also undisputed. This is in China, right? So I understand, you know, these are very important issues. So I think it would be best to address the issues that need to decide with the full briefing on that. And as to that, I'd like to also comment, Judge Miller was talking about the language of the statute. And I agree that if you look at court definitions, you see some ambiguity. In 1964, dictionary, sorry, not court, dictionary definitions, dictionaries do have the narrow, and they have the broad. But as Judge Miller pointed out, the narrow, the court only definition is really excluded by the plain language. You just look at the plain language of the 1964 statute in the prior statute, tribunal has replaced court. It cannot be the case that you have ambiguity there because of the dictionary definition. And just think about this, dictionaries, of course, they give you every possible definition, because they don't know the context. Here, the court has the benefit of the context. That's why I think judicial decisions are the most relevant. They have been relied on by the Sixth Circuit. And we cited a couple of Supreme Court cases where you look at not only dictionaries, but you look at judicial usage. Judicial usage is the relevant context, right? So we think that's relevant. And the one thing I'd like to add is if you look at the judicial usage, I'm actually not aware of any court decisions where they suggest that tribunal cannot mean only court. I am aware of decisions where tribunal is used to refer to a court, like the Supreme Court sometimes calls itself this tribunal. But that judicial decision that uses it to mean only court, and I don't think there is. I do have other points, but I was going to stop at this tribunal. I'll have other tribunal. Yeah. Your Honor, let the tribunal. Do you have any other questions you particularly like me to address? I would like to talk quickly about public policy and a couple of other points. Please do. Okay. On policy. I mean, really, I think policy is absolutely in our favor because there's a strong policy to promote arbitration. And basically what you'd be saying, look, if you entered a contract with a dispute resolution clause with litigation, you get the benefit of this statute. If you enter into arbitration, you lose out on that. You would be defeating kind of the idea that arbitration is supposed to be strongly supported. Now, the other appellants have argued, well, this would be a disaster for arbitration because we're going to have too much discovery. One of the benefits of arbitration is limited discovery. Yes, discovery is generally more limited, but that doesn't mean it no longer exists. And abolishing entirely would be a very instrument. Fortunately, we have finer tools, more precise tools to control it. The Supreme Court made absolutely clear in Intel that courts have broad discretion to limit or deny 1782 requests. In fact, in our case, just court judge denied it or limited a number of our requests. And one of the particular factors that that's especially relevant is whether the foreign We cited a couple of cases, they weren't arbitration, but they were 82 cases where the party, it was like one was before the Korean FTC, the Fair Trade Commission. And they were trying to get discovery for use in it. And the Korean Fair Trade Commission submitted an amicus brief saying we don't want it. Not surprisingly, it was denied. Same thing happened in Germany. So that's possible if the tribunal doesn't want it, they simply say they don't want it. But what is the benefit of it? Actually, 1782 is typically used for third parties who are outside the jurisdiction of the court. And that's something Intel also emphasized said, look, if it's a party in front of the tribunal, the arbitral tribunal, you should try to get it from them. But if it's somebody else, you know, the tribunal may not have arbitral tribunal may not have jurisdiction. Well, they didn't say the tribunal, the foreign tribunal may not have efficiency is a great thing. But having fair results is also great. And so you need to balance the two. So like tilting the scales and just saying, forget it, you're not going to need discovery. That's not the way to do it. You've got to trust the discretion of judges and arbitral tribunals to control the process. And interestingly enough, the restatement of the US law of international arbitration, which was just adopted last year after about 10 years of study by a very but international arbitration practitioners strongly endorsed the view that the plain language of 1782 should prevail and extends to arbitration. Now, if the international arbitration committee was concerned, this would destroy international arbitration, you would certainly expect them to say so they did not. In fact, as you probably know, arbitrations now are huge, they're brilliant arbitrations are not unusual. This case is, you know, 10 or $20 million. That's not small either. Truth is important. Council, can I ask you, do you happen to know, this is somewhat off the wall question, but just if we take the flip side of things, do you know whether private arbitration panels in our country? I'm thinking maybe it would be under the Hague Convention are allowed to, you know, sort of get this sort of discovery triggered in foreign countries? Is it in other words, is it a reciprocity in the way? You know, if we adopt your view, is there in fact reciprocity for arbitration panels in our country seeking discovery? I don't know of an exactly similar statute. I do think that under the Hague Convention, it's possible you can enter a tribunal can go to a court and ask for them to a US court to issue letters of repertory or to a foreign court to get assistance in private arbitration panels here in the United States. But I mean, it's clear from the legislative history that the intent was to kind of promote international cooperation of some kind. And I think certainly construing it to apply in that situation would cover that last. Yeah, I was gonna say just wrap up. I'll give you another minute. You we've taken both of you well over your time. Okay. Last one was just there was a comment about none of the discovery was submitted. There are two issues there. One was was the discovery submitted? And one was it actually a valuable process? Or? And we think the answer is, was it a valuable process? Absolutely. The answer is yes. It's true is not submitted. And of course, we're now on facts that are outside the record. But there was kind of a perfect storm of circumstances. One, the arbitration was moving quickly to there were a lot of delays. Three, and most importantly, probably is we weren't able to deposition, we didn't expect the documents to be that important. And they actually ended up producing only financial documents, essentially, with a few on the merits, but very few, they said they didn't have them. We don't, we're not sure about that. But we needed the deposition. Fourth, the last point here is the financial documents were in fact, very valuable. The issue here is we're trying to freeze assets in China. When we went to their bank account, there wasn't anything there. We had evidence that they transfer large amounts of money in the US. So we wanted to be able to take discovery about here in the US and then find wire transfers from China. So we could trace back. That's why we got it. We were on the path. We got stuff. There is actually still supplemental, we don't think the discovery is complete, we would want to pursue it. That's obviously a question for the district court. But we are on the path. And we believe that's one of the reasons they paid the award. They did pay the award quickly, but they knew we were on the path. They didn't want us on that council. We got the gist of the documents. Okay, thank you very much for your argument. Let's put two minutes on the clock for counsel for the appellants. Thank you. As to the issue of their not being materially in the record right now about the court, I'd certainly be willing to put together a short supplemental filing. And I'm sure the counsel for appellees would be willing to do so as well and maybe better positioned, considering he has a little bit more knowledge about what the proceedings are that have been instituted. But we'd be happy to submit something, given the fact that these circumstances didn't exist at the time of the initial briefing, they're certainly relevant to the determination of if there's a lot of disputes. If that would be helpful, I'm more than happy to do so. On the issue of sanctions, to be clear, we don't concede that the sanctions order was appropriate. However, we did not appeal the sanctions order. But it may be worth getting into a little bit background about what happened there. Back in January of 2020, the court issued its first order. We took an appeal and filed a motion for stay pending appeal, which the lower court granted. The lower court granted that and found that there was irreparable harm in the absence of a stay pending appeal, found that there are serious issues raised on appeal, stayed the discovery that he had just ordered. Then we were remanded back to the lower court, further proceedings, an order was issued at the end of February, compelling us to produce documents that for deposition. And then we proceeded to exhaust our rights, our procedural rights, by seeking a stay pending appeal from the lower court, we sought a stay pending appeal from this court, we raised the same issues, saying, there's a serious circuit split here, and this issue is central to the case, can we get a stay pending appeal? Once those were denied, we immediately began producing documents. We had actually produced documents by the time the court issued its sanctions order. So we certainly don't agree that the sanctions order was appropriately granted in this case. And it is part and parcel with the merits issue of does 1782 allow for discovery for use in a private arbitration. Okay, counsel, you've already used up all your time on rebuttal. Do you have a burning point on the merits that you want to leave us with? I don't, your honor. I think we've thoroughly briefed the issues and certainly thank the court for indulging an extended argument here. These are some important issues and certainly appreciate it. Certainly, yes. Now we are happy to indulge you and thank you both for your arguments on this case. The case just argued is submitted. Thank you. We'll move now to the last case for argument on the calendar today, which is Bristol-Myers-Squibb versus Connors. And when counsel on that case are ready to go, we'll be happy to hear from you.
judges: Watford, Friedland, Miller